The order below is hereby signed.

Signed: February 3 2023



_____
Elizabeth L. Gunn
U.S. Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| In re: | Case No. 19-00828-ELG |
| **Jaspreet Kaur Attariwala,**<br>**Debtor.** | **Chapter 13** |

### ORDER OVERRULING OBJECTION TO CONFIRMATION

The Court has before it the *Amended Chapter 13 Plan* (ECF No. 61) filed by the above-captioned Debtor, confirmation of which was stayed by the *Consent Order on Motion to Compel and Motion to Stay Entry of Order Confirming Chapter 13 Plan* entered by the Court on October 14, 2020. ECF No. 133. For the reasons stated below, the Court will overrule any outstanding objection to confirmation by BioConvergence LLC d/b/a Singota Solutions LLC and confirm the Amended Chapter 13 Plan.

### I.      Background[1]

#### i.      *Procedural History as to Confirmation*

This case presents an unusual situation in a chapter 13 case, where more than three years after the filing of the petition the debtor has yet to have a confirmed chapter 13 plan. The path to confirmation of the Amended Chapter 13 Plan herein was hotly litigated throughout the pendency

---

[1] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact where appropriate. *See* Fed. R. Bankr. P. 7052.

of this case. A thorough understanding of the history of this case is necessary in support of Court's final determination on confirmation of the Amended Chapter 13 Plan.

On December 17, 2019 (the "Petition Date"), Jaspreet Attariwala (the "Debtor") filed a voluntary petition under chapter 13. Voluntary Pet., ECF No. 1. Prior to the filing of her case, Ms. Attariwala was a defendant in ongoing litigation removed from the Monroe County, Indiana Circuit Court to the United States District Court for the Southern District of Indiana (the "Indiana Litigation"), which litigation was initially stayed by the filing of the petition. After an extension of the filing deadline, the Debtor timely filed her initial proposed plan on January 12, 2020, which was objected to by BioConvergence LLC d/b/a Singota Solutions ("Singota") on February 3, 2020. On March 4, 2020, Singota issued discovery to the Debtor on the contested matter of plan confirmation including a deposition notice and written discovery (the "Plan Discovery"). ECF No. 57. Shortly thereafter, on March 16, 2020, the Debtor filed her amended chapter 13 plan (the "Plan"), which remains the operative plan in this case. ECF No. 61. Under the applicable Local Bankruptcy Rules at the time, the filing of the Plan mooted Singota's pending objection to the original plan but did not impact the pending discovery requests. The Plan provides for payments of $300.00 over a period of 60 months for a plan base of $18,000.00, with proposed pro rata distributions to unsecured creditors. The Debtor proposes to make ongoing payments on her two secured obligations—her mortgage and car loan—directly to the lienholders. The secured obligations were current at the time of the filing of this case and there are no arrears cured through the Plan. Nor does the Debtor have any priority unsecured claims. Therefore, except for the chapter

13 trustee's statutory fees, the entirety of the Plan's funding is proposed to be paid to unsecured creditors.[2]

On April 6, 2020, Singota filed its objection to confirmation of the Debtor's Plan (the "Objection") (ECF No. 63). The Objection alleges that the Plan could not be confirmed for failure to comply with any or all of three specific subsections of § 1325 of the Bankruptcy Code:[3] (i) § 1325(a)(7) that the Debtor's filing of the petition was not in good faith; (ii) § 1325(a)(6) that the Debtor will not be able to make all payments under the Plan and comply with the Plan; and (iii) § 1325(a)(4) that the Plan fails to meet the best interests of creditors test. Objection at ¶¶ 13–48. A preliminary hearing on confirmation of the Plan was held on June 12, 2020, at which time an evidentiary hearing was set for August 21, 2020 (the "2020 Confirmation Hearing"). Prior to the 2020 Confirmation Hearing, on July 17, 2020, Singota filed a *Motion to Compel Production of Documents* (the "Motion to Compel") (ECF No. 92) related to the Plan Discovery. The Motion to Compel was not set for hearing until three days after the 2020 Confirmation Hearing and no motion to expedite a hearing thereon was filed.

On August 21, 2020, this Court (Teel, J.) conducted an evidentiary hearing on confirmation of the Plan, at which hearing[4] the Debtor was the only witness and testified in support of confirmation. In addition to the Debtor's testimony at the 2020 Confirmation Hearing, the Court took judicial notice of its oral opinion from June 24, 2020 granting Singota relief from the automatic stay to continue the Indiana Litigation, as well as the Debtor's testimony and evidence

---

[2] The Plan does not provide for payment of attorneys' fees for the Debtor, which under the version of the Plan as filed requires a further fee application and order by the Court. Nothing herein shall be deemed to be a determination as to the allowance or method of payment of attorneys' fees.

[3] 11 U.S.C. §§ 101–1532 (as hereafter amended, the "Bankruptcy Code"). All section references herein shall be to the Bankruptcy Code unless otherwise indicated.

[4] The transcript of the hearing is on the docket. Tr. Hr'g Aug. 21, 2020, ECF No. 109 [hereinafter *Tr. Oral Ruling*].

produced in prior hearings in the case. *See generally* Tr. Oral Ruling at 13:7–14:19, 34:2–42:21,

ECF No. 109. Upon conclusion of the evidence, Singota and the Debtor argued the question of

whether the Debtor's Plan should be confirmed. Tr. Oral Ruling at 14:20–32:11. During argument,

the Court entered into evidence the Debtor's history of payments to the chapter 13 trustee (the

"Trustee"). Tr. Oral Ruling 20:9–21:2. The Trustee, by counsel, participated in the 2020

Confirmation Hearing, did not object to confirmation of the Plan, and did not take a position on

the other issues raised during the hearing. Tr. Oral Ruling at 3:2–11. At no time during the 2020

Confirmation Hearing did Singota move to continue or otherwise delay the consideration of

confirmation of the Debtor's Plan as a result of the outstanding Plan Discovery or pending Motion

to Compel. *See generally* Tr. Oral Ruling. At the conclusion of the 2020 Confirmation Hearing,

the Court took a recess, after which it issued an extensive oral ruling (the "Oral Ruling") on the

question of confirmation. Tr. Oral Ruling 32:24–25. The Oral Ruling included both findings of

fact and conclusions of law, which will be discussed in more detail below. The Court ultimately

decided that the Debtor and the Plan met the requirements of § 1325 and ordered confirmation of

the Debtor's Plan.

Shortly after the 2020 Confirmation Hearing, on September 8, 2020, the Trustee filed her

*Recommendation Regarding Confirmation of Plan Filed March 16, 2020* (ECF No. 111)

recommending confirmation and submitted a proposed confirmation order to the Court for entry.

Before the Court entered a confirmation order consistent with its Oral Ruling, on September 9,

2020, Singota filed an *Expedited Motion to Stay Entry of Order Confirming Chapter 13 Plan* (the

"Stay Motion") (ECF No. 112) alleging that on August 31, 2020, ten (10) days after the 2020

Confirmation Hearing, the Debtor produced additional bank statements pursuant to the Plan

Discovery, which raised the possibility that the Debtor "concealed assets and engaged in

bankruptcy fraud in filing her petition." Stay Motion at 1, ECF No. 112. The Stay Motion raised, for the first time, the argument that confirmation of the Debtor's Plan should be delayed pending resolution of not only the Motion to Compel, but also pending the Debtor's compliance with any order compelling production (and thus the Plan Discovery), and a "reasonable period of time" thereafter for Singota to review the documents produced. *Id.* at 5–6. The Stay Motion raised several different issues related to responses to the Plan Discovery that Singota alleged was outstanding and relevant to the consideration of confirmation of the Debtor's Plan, specifically her good faith in filing this case as required by § 1325(a)(7). *See generally id.* The Stay Motion did not raise any issues related to the Court's findings in the Oral Ruling as to §§ 1327(a)(4) and (a)(6). *See id.* at 27–28.

On September 14, 2020,[5] the Debtor filed an objection to the Stay Motion and the next day Singota filed a reply in support of the same. The Court held an initial hearing on the Stay Motion on September 16, 2020, which was continued to September 23, 2020, on request of the parties to allow for the continuation of settlement discussions. *See* Minute Entry, ECF No. 123. At the continued hearing, Singota and the Debtor advised the Court that they had reached an agreement as to the Motion to Compel and the Stay Motion. *See* Minute Entry, ECF No. 126. Therefore, on October 14, 2020, the Court entered the *Consent Order on Motion to Compel and Motion to Stay Entry of Order Confirming Chapter 13 Plan* (the "Consent Order") (ECF No. 133) in which the parties agreed to, *inter alia*, certain conditions relating to the outstanding Plan Discovery. Specifically, the Consent Order required the Debtor to sit for a continued deposition and the Court's holding in abeyance entry of a confirmation order for sixty (60) days after the last day

---

[5] On September 10, 2020, the day after the filing of the Stay Motion but prior to the filing of the Debtor's response thereto, this case was reassigned to Judge Gunn.

when the Debtor produced all required documents (the "Abeyance Period"). *Id.* The Debtor and

Singota were to file a joint praecipe with the Court upon the completion of the agreed discovery.

*Id.* Unfortunately, the entry of the Consent Order did not result in the final resolution of the

discovery issues between the Debtor and Singota, nor was a joint praecipe advising the Court of

the commencement of the Abeyance Period ever filed. Entry of the Consent Order was followed

in the next twelve months by motions to extend the deadlines contained therein, a motion for

protective order by the Debtor, and multiple other pleadings regarding third party discovery, all

purportedly arising from information obtained through the Plan Discovery.

On December 10, 2021, almost fifteen (15) months after the 2020 Confirmation Hearing,

the Debtor filed a *Motion to Conclude Confirmation Hearing* (the "Motion to Set") (ECF No. 181)

requesting the Court set a date to conclude the process of consideration of confirmation of the

Plan. Once again, the Debtor's motion drew an objection from Singota, who raised issues with

discovery disclosures, and a response thereto from the Debtor. ECF Nos. 182, 187. The Court set

a hearing on the Motion to Set on January 14, 2022, and the evening prior Singota filed a *Motion*

*to Compel Production of Documents and a Resumed Deposition of Debtor on Certified Questions*

(the "Second Motion to Compel"). ECF No. 192. At the hearing held January 14, 2022, the Court

established a briefing schedule for the Second Motion to Compel and other anticipated discovery

motions and set a further hearing on February 10, 2022. *See* Minute Entry, ECF No. 195.

At the February 10, 2022 hearing, the parties represented that they had resolved the Second

Motion to Compel, and the Court set a further confirmation hearing on March 11, 2022

(approximately 27 months after the Petition Date, and over 18 months after the 2020 Confirmation

Hearing). *See* Minute Entry, ECF No. 214. However, due to the Debtor's health, the March 2022

confirmation hearing was continued by consent to June 2, 2022. ECF Nos. 230, 233. During this

6

period of time, despite the representation as to the agreement of resolution on the Second Motion

to Compel, the parties were unable to submit an agreed order on the Second Motion to Compel.

One week prior to the continued confirmation order, on May 26, 2022, Singota filed *Motion to*

*Continue Confirmation Hearing* (the "Singota Motion to Continue"), once again alleging that it

had not yet gathered all "relevant and necessary evidence" from the pending discovery and

requesting a further continuance of the June 2, 2022 rescheduled hearing. ECF No. 237. The

Debtor objected the next day to the Singota Motion to Continue, to which Singota responded the

same day. On May 31, 2022, the Court issued an *Order* summarizing the status of the case from

February 2022 through the date thereof, set a hearing on the Singota Motion to Continue on June

2, 2022 prior to the confirmation hearing (the "Order Setting Hearing"), and ordered that if the

continuance was not granted, then the confirmation hearing would be held immediately thereafter.

ECF No. 241.

On June 2, 2022, the Court denied the Singota Motion to Continue and convened the

continued confirmation hearing in the case on the sole remaining allegation as elaborated in the

Motion to Stay—that the Debtor's Plan could not be confirmed due to the Debtor's failure to file

the case in good faith as required by § 1325(a)(7).[6] The hearing did not conclude on June 2, 2022

and was continued to mid-July 2022 for further testimony. *See* Minute Entry, ECF No. 248.

However, due to an unexpected health issue for counsel for the Debtor, the continued hearing was

not reconvened until August 16, 2022,[7] and concluded on August 19, 2022 (collectively, the "2022

Confirmation Hearing"). *See* Minute Entries, ECF Nos. 266, 271. The testimony at the 2022

---

[6] On the morning of June 2, 2022, prior to the hearing, Singota filed and noticed a *Motion to Dismiss [Case] with Prejudice for Bad Faith* (the "Motion to Dismiss") (ECF No. 244) but did not set the motion for hearing. The Debtor timely objected to the Motion to Dismiss, however the matter was not set for hearing prior to the Court taking this matter under advisement.

[7] *See* Time-Sensitive Mot. to Continue Hr'gs, ECF No. 258; Order Granting Mot. to Continue Hr'gs, ECF No. 259.

Confirmation Hearing is more specifically discussed below. At the conclusion of the evidence, in lieu of closing arguments, the Court provided the parties with the opportunity to submit contemporaneous post-hearing briefs as memorialized by a *Scheduling Order* entered August 24, 2022. ECF No. 272. The Debtor, Singota, and chapter 13 trustee filed post-hearing briefs,[8] and the Court took the matter under advisement.

### ii.    *2020 Confirmation Hearing Findings of Fact and Conclusions of Law*

As noted *supra*, at the conclusion of the 2020 Confirmation Hearing the Court (Teel, J.) made detailed findings of fact and conclusions of law in support of its decision that the Debtor's Plan met the requirements for confirmation under § 1325. Shortly after the 2020 Confirmation Hearing, a single transcript containing of both the hearing and the Court's oral ruling was docketed and contains the entirety of the Court's findings and conclusions. Tr. Oral Ruling, ECF No. 109. Because the Court's analysis herein begins with the original findings and conclusions from the 2020 Confirmation Hearing, the relevant findings and conclusions are summarized herein.

The Court began its oral factual findings reviewing the lengthy litigation history between the Debtor and Singota (through that date, and which has continued in the two and a half years between the 2020 Confirmation Hearing and the issuance of this Order), including adoption of various factual findings by the United States District Court for the Southern District of Indiana in the Indiana Litigation. Tr. Oral Ruling at 34:2–38:13. Included in these adopted findings were those related to the many orders regarding the turnover of the Debtor's electronic devices in the

---

[8] *See* Trustee's Mem. in Opp'n to Mot. to Dismiss Case & in Supp. of Conf. of the Plan, ECF No. 282; Post-Hr'g Br. in Supp. of Conf. of Debtor's Chapter 13 Plan, ECF No. 283; Post-Hr'g Br., ECF No. 284. Due to a previously scheduled ECF outage beginning approximately 10:00 p.m. Eastern on September 30, 2022, Singota's brief was not docketed until October 1, 2022. The Court finds that Singota complied with Section D.3.e. – Technical Problems of the Administrative Procedures for Filing, Signing, and Verifying Documents by Electronic Means and that its brief was timely filed.

Indiana Litigation and her asserted obligation to bear the cost of the forensic work of then court-appointed expert Rebecca Green ("Ms. Green"). Tr. Oral Ruling at 36:7–38:13. The history of hearings in the Indiana Litigation, including the Debtor's failure to appear at a hearing in Monroe County Circuit Court in April 2019, the resulting writ of attachment for her arrest, the removal of the proceeding to federal court, Singota's request for a preliminary injunction (the "Motion for Preliminary Injunction"), and the failed settlement conference conducted in December 2019 shortly before the Petition Date. Tr. Oral Ruling at 38:14–40:9. Finally, the Court summarized the history of the granting of the Motion for Preliminary Injunction and entry of a preliminary injunction (the "Preliminary Injunction") in the Indiana Litigation, including the annulment stay in this case so that the Preliminary Injunction entered December 19, 2019 would be effective and granting relief from stay to allow Singota to seek to enforce the injunction. Tr. Oral Ruling at 40:10–41:25.

After the findings as to the Debtor's pre-petition conduct and the resulting annulment and relief from stay in this case as to Singota, the Court turned to findings based upon the filings in this case. In this case, the Debtor's schedules showed a negative net monthly net income of $719, however her schedules also reflected $143,000 in various exempt retirement accounts. Tr. Oral Ruling at 42:1–11. The Debtor testified that since filing, she had reduced her expenses and was willing, if necessary, to use exempt funds to make her plan payment. Tr. Oral Ruling at 42:22–43:12. Based upon these facts and Debtor's consistent history of timely payments to the trustee in the case, the Court found that the Debtor's proposed Plan with payments of $300 per month for 60 months, for a total of $18,000, is feasible as required by § 1325(a)(6). Tr. Oral Ruling at 43:10–12.

Although raised in Singota's Objection to Confirmation, the Court did not specifically address factual findings related to the best interest of creditors test under § 1325(a)(4). *See* Tr. Oral Ruling at 46:19–47:5. However, in the Debtor's *Response to Objection by BioConvergence LLC d/b/a/ Singota Solutions to Confirmation of Debtor's Amended Chapter 13 Plan* (the "Confirmation Response") filed on August 20, 2020, the Debtor consented to the main issue raised by Singota—that if there are any non-exempt proceeds from her pending counterclaim against Singota in the Indiana Litigation, such non-exempt proceeds would necessarily need to be incorporated into her Plan. Confirmation Response at ¶ 33, ECF No. 98. The Court, however, did specifically find that the Debtor not only met the minimum requirement for the best interest of creditors but went beyond the minimum by offering 60 months of payments when she could have proposed only 36 months. Tr. Oral Ruling at 46:19–47:5; *See* § 1322(d).

The final and primary issue ruled upon by the Court at the 2020 Confirmation Hearing was the question of the Debtor's good faith. Tr. Oral Ruling at 53:17–22. Although the Objection only referenced § 1325(a)(7), the Court considered both good faith in filing the plan under § 1325(a)(3) and the filing of the petition being in good faith under § 1327(a)(7). Tr. Oral Ruling at 44:13–16. The Court concluded "that the Debtor has proceeded in good faith in filing this case and then proposing the plan." Tr. Oral Ruling at 43:16–17. In reaching its conclusion, the Court relied upon the long-established standard in this Circuit of applying the "traditional meaning of good faith as honesty of intention." Tr. Oral Ruling at 44:13 (quoting *Barnes v. Whelan (In re Barnes)*, 689 F.2d 193, 195 (D.C. Cir. 1982)).

The Court's analysis was then more thoroughly explained by discussing the ten (10) factors established by the United States Bankruptcy Court for the Western District of Virginia in *In re Colston* to consider the totality of circumstances related to good faith under § 1325(a)(3). Tr. Oral

Ruling 44:9–25 (discussing *In re Colston*, 539 B.R. 738, 750 (Bankr. W.D. Va. 2015)). As to each

of the factors the Court made the following conclusions of law:

a. <u>Percentage of proposed repayment to creditors</u>. In this Circuit, this is not an

appropriate factor to consider for § 1325(a)(3) as *Barnes* held that there is no prerequisite minimum

chapter 13 payment for confirmation. *In re Barnes*, 689 F.2d at 198.[9]

b. <u>Debtor's financial situation</u>. The Court examined the scheduled claims in the case

including the disputed $50,000 to Ms. Green, almost $65,000 to prior litigation counsel, personal

loans from her parents of $47,000, and the unliquidated disputed claim of Singota. Tr. Oral Ruling

at 47:13–48:4. With respect to assets, the Court found that the Debtor is not seeking to retain any

luxury items and at the time of filing was without employment and needed to address her debts via

bankruptcy. Tr. Oral Ruling at 47:6–9, 48:4–6. Thus, the Court concluded "I think the Debtor had

a genuine intention in filing the case to deal with her debts, to try to obtain a discharge of those

debts through chapter 13." Tr. Oral Ruling at 48:7–9. Thus, the Court found this factor "certainly

weighs in favor" of the Debtor's good faith. Tr. Oral Ruling at 48: 9–11.

In addition, in support of this conclusion, the Court found that Singota had not "shown any

bad faith [by the Debtor] in proposing the plan, at least, as far as post-petition conduct is concerned.

It has not pointed to any false information under [the Debtor's] schedules. Her statement of

financial affairs does not contend that she has hidden assets from the case. . ." Tr. Oral Ruling at

45:23–46:3. Further, Singota "simply hasn't showed [sic] anything during the case that would

show bad faith" and that the Debtor's pre-petition misconduct "is not misconduct that has resulted

in depriving Singota of rights within the bankruptcy case." Tr. Oral Ruling at 45:6–10.

---

[9] As stated elsewhere, "[e]nactment of § 1325(b)(1) closed the door on a substantial or meaningful repayment analysis" under § 1325(a)(3). *In re McGehan*, 495 B.R. 37, 43–44 (Bankr. D. Colo. 2013).

c. <u>Period of time over which creditors will receive payments</u>. Because the Debtor voluntarily proposes to make payments for 60 months instead of the minimum required 36 months, the Court found that this factor "certainly weighs in favor of finding good faith." Tr. Oral Ruling at 48:12–15.

d. <u>Debtor's employment history and current and future employment prospects</u>. As of the 2020 Confirmation Hearing, the Debtor was unemployed and hoping to obtain future employment. The Court noted that if employment were obtained, a creditor could move the Court for a plan modification, but in the circumstances where a debtor is not employed, "she ought to be entitled to seek bankruptcy relief." Tr. Oral Ruling at 48:16–24.

e. <u>Nature and amount of unsecured claims</u>. The Debtor's primary debt is that of Singota's "based upon the misconduct of the Debtor." Tr. Oral Ruling at 49:2–3. The Court noted that the Preliminary Injunction "certainly suggests that [the Debtor] has engaged in misconduct in the state court litigation and increased the claims that have been asserted against her. And I don't condone her misconduct in doing that, but the Debtor testified today that she did not file the bankruptcy case to thwart Singota." Tr. Oral Ruling at 49:6–10. The Court further found that it is "obvious the Debtor is in financial distress and that the nature of her debts doesn't change the fact that she's entitled to attempt to obtain a discharge of those debts by making chapter 13 plan payments and completing the plan." Tr. Oral Ruling at 50:1–5.

f. <u>Debtor's past bankruptcy filings</u>. The Debtor has no prior bankruptcy filings. Tr. Oral Ruling at 50:6–8.

g. <u>Debtor's honesty in disclosing facts of the case</u>. The Court's entire finding on this factor was "there's no contention that her schedules or statement of financial affairs or that her

12

testimony in this case has been dishonest." Tr. Oral Ruling at 50:10–12. Therefore, the Court did

not conduct any further analysis as to this factor in the original 2020 Confirmation Hearing. *Id.*

      h.  <u>Nature of debtor's prepetition conduct that gave rise to the case</u>. The primary

contention of Singota at the 2020 Confirmation Hearing was the Debtor's prepetition conduct in

the Indiana Litigation. The Court addressed the findings in the Indiana Litigation with respect to

the Debtor's conduct, noting that her liability to Singota or Ms. Green was going to exist, maybe

not in quite as large an amount as it does now, given her lack of forthrightness in the Indiana

Litigation, and concluding that she was going to "face these claims regardless, at least somewhat."

Tr. Oral Ruling at 50:20–25. The Court concluded that this factor weighs somewhat in favor of

Singota, but that it was not a controlling factor and had to be balanced out with the other factors.

Tr. Oral Ruling at 50:25–51:3.

      i.  <u>Whether the debts would be dischargeable in a chapter 7 proceeding</u>. The Court

found that filing a chapter 13 instead of chapter 7 in itself cannot be bad faith, and that there was

no meaningful increase in potentially dischargeable debts in the Debtor's case in chapter 13 as

opposed to chapter 7. Tr. Oral Ruling at 52:5–22. The Court further found that there was no

"attempt by the Debtor to unfairly manipulate the Bankruptcy Code." Tr. Oral Ruling at 53:1–3.

      j.  <u>Any other unusual or exceptional problems facing the debtor</u>. Finally, the Court

noted that there was no challenge to the Debtor's eligibility for chapter 13. Tr. Oral Ruling at 53–

16.

      For each of those reasons, the Court reiterated its conclusion that "the Debtor has proceeded

in good faith in filing the petition and also in proposing her plan." Tr. Oral Ruling at 53:17–18.

Thus, the Court's analysis of the *Colston* factors was applied to both the elements of §§ 1325(a)(3)

and 1325(a)(7) in considering plan confirmation and finding confirmation of the Plan was

appropriate. Tr. Oral Ruling at 53:17–22. Thereafter, the hearing was concluded pending receipt of a confirmation order from the Trustee. As set forth *supra*, the Stay Motion was filed, and the corresponding confirmation order was never entered.

### iii.    *2022 Confirmation Hearing*

Given the reasoning set forth in the Stay Motion and the Consent Order, and upon the Debtor's Motion to Set and the Court's Order Setting Hearing, the Court convened the 2022 Confirmation Hearing on June 2, 2022 to consider the question of whether the Debtor's chapter 13 case was filed in good faith as required by § 1325(a)(7) . Tr. Hr'g June 2, 2022 at 23:17–24, 35:23–25, Aug. 10, 2022, ECF No. 263 [hereinafter *Tr. June 2*]. The 2022 Confirmation Hearing was conducted over three days between June and August 2022, concluding on August 19, 2022, with the matter being ripe for determination after submission of the parties' post-hearing briefs.

At the commencement of the 2022 Confirmation Hearing, the Court reiterated the limited scope of the renewed confirmation hearing to pertain only to the good faith filing element of § 1325(a)(7) and noting the Court's previous detailed findings as to § 1325(a)(3)'s good faith in proposing the plan at the 2020 Confirmation Hearing.[10] Tr. June 2 at 23:17–24. To contest the Debtor's good faith in the filing of this case, Singota alleges that the totality of the circumstances supports a finding of bad faith on the part of the Debtor. Specifically, Singota points to the following: i) renewed arguments regarding the Debtor's pre-petition conduct in the Indiana Litigation, including the various contempt orders and findings where the Court specifically stated it "didn't condone" the Debtor's actions; ii) the Debtor's pre-petition income; iii) the Debtor's

---

[10] In the period between the 2020 Confirmation Hearing and 2022 Confirmation Hearing, the Court modified its procedures for chapter 13 plan confirmation, including a new requirement that debtors file a preconfirmation certificate prior to confirmation of their plan. *See* Local Bankruptcy Rule 3015-3(b) (Aug. 2, 2022). The Debtor filed her preconfirmation certificate on June 1, 2022. ECF No. 242.

limited debt other than claims associated with the Indiana Litigation; iv) the Debtor's pre-petition spending from a non-retirement investment account at Chase; v) the Debtor's delayed and/or alleged inaccurate disclosures in this case as to certain accounts and assets; and vi) the Debtor's inaccurate, delayed, and/or incomplete discovery responses in this case. Tr. Oral Ruling at 49:9; Tr. June 2 at 27:10–21, 31:22–24.

There were only two witnesses at the 2022 Confirmation Hearing, the Debtor and her husband Simranjit Singh also known as Simranjit Attariwala. Each witness was represented by counsel during the hearing. Tr. June 2 at 3:12–4:15, 10:4–5. Due to the annulment and relief from stay granted to Singota, the Indiana Litigation has continued post-petition and the Debtor and Singota are involved in significant motions practice therein. In addition, the Court notes that discovery disputes between the parties have not been limited to this Court. Singota has also sought relief against Mr. Singh several times during the Indiana Litigation, and a miscellaneous proceeding in the United States District Court for the District of Columbia is presently pending between Singota and Mr. Singh.[11] Thus, it was not surprising to the Court that at all times during the testimony of the Debtor and Mr. Singh, there was an underlying tension particularly related to the Debtor's obligations as a litigant/debtor in this chapter 13 case and concerns regarding the ongoing Indiana Litigation. Similarly, there was an ever-present discord between the scope of relevant discovery to the confirmation of the Plan and that which may be only relevant to the Indiana Litigation. In other words, it is clear to the Court that the Debtor's responses in her testimony at the 2022 Confirmation Hearing and in other pleadings were informed not solely by

---

[11] *BioConvergence LLC v. Singh*, Case No. 1:21-cv-02090-CRC (Aug. 4, 2021).

their impact on the issue of confirmation, but also their possible impact in the Indiana Litigation.[12]

With this background, the Court turns to the evidence presented at the 2022 Confirmation Hearing.

### a. Pre-Petition: The Indiana State Court Litigation

In early 2019, Singota filed an action in the Monroe County Circuit Court (the "Indiana State Court") against the Debtor alleging claims against the Debtor related to her misappropriation of Plaintiff's trade-secret, confidential, and proprietary information from its computers, servers, and email system, as well as her breach of her Employment Agreement with Plaintiff. Comp. at ¶ 59, *BioConvergence LLC v. Attariwala*, AP No. 20-10009-ELG (Mar. 13, 2020), ECF No. 1 On February 28, 2019, the Indiana State Court entered a temporary restraining order against the Debtor in connection with the nascent stages of the Indiana Litigation. Tr. Hr'g Aug. 16, 2022 at 8:6, Aug. 31, 2022, ECF No. 276 [hereinafter *Tr. Aug. 16*]; Ex. A. Further preliminary injunction hearings were held in the Indiana State Court on March 1 and March 4, 2019, resulting in a stipulated preliminary injunction and an agreed order for the inspection of electronic devices both entered March 4, 2019, the latter requiring the Debtor to pay Ms. Green for her work in determining what data the Debtor had on her devices that belonged to Singota. *See* Exs. B-E. The Debtor and Mr. Singh were aware of the March 2019 Indiana State Court hearings. *See generally* Tr. June 2 at 40; Tr. Aug. 16 at 8:22–11:14.

The Debtor has, from the beginning of the Indiana Litigation, expressed disagreement with the orders to pay Ms. Green (the "Pay Order") and the scope of Ms. Green's work. *See*, *e.g.*, Tr.

---

[12] Apparently, the Debtor's concerns were well founded because shortly after receipt of the transcripts from the 2022 Confirmation Hearing, Singota filed a motion in the Indiana Litigation seeking to hold the Debtor in contempt of certain orders in that court based on her testimony at the 2022 Confirmation Hearing. *See BioConvergence, LLC v. Attariwala*, CA No. 1:19-cv-01745-SEB-MG, *Br. in Supp. of Mot. to Hold Def. in Contempt of Expenses Orders and to Sanction Her and to Order Former Att'ys to Disgorge Fees*, 1–2 (S.D. Ind. Oct. 5, 2022), ECF No. 420 ("Evidence produced in her bankruptcy case and presented at evidentiary hearings on June 2, 2022, and August 16 and 18, 2022, reveals Attariwala had ample funds to comply with the Expenses Orders").

Aug. 16 at 54:6, 71:3–7, 111:15, 169:17. In March 2019, the Debtor paid $5,000 to Ms. Green, and despite further orders from the Indiana State Court, has never paid any additional funds towards Ms. Green's work in the Indiana Litigation. Tr. Aug. 16 at 19:3–9. The Debtor debates whether Ms. Green properly itemized how the initial $5,000 was spent and did not agree with her actions or summary of charges. Tr. Aug. 16 at 111:25. The Debtor filed a motion to amend Pay Order, but that pleading was denied orally when, as discussed below, the Debtor did not appear at an April 18, 2019, contempt hearing. Tr. Aug. 16 at 138:9–25, 139:1–5; Ex. H at 3:7.

In April 2019, Singota moved for sanctions in the Indiana Litigation for the Debtor's failure to comply with the Pay Order. Tr. Aug. 16 at 20:2–14; Ex. F. On April 16, 2019, the Indiana State Court entered a contempt order which required the Debtor to fund another $15,000 towards Ms. Green's work. Tr. Aug. 16 at 43:16–19; Ex. F. The Debtor disputes the validity of the civil contempt order because she argues that there was never a consideration of her ability to pay any of the ordered amounts. Tr. Aug. 16 at 71:3–7. The next day, on April 17, 2019, in a continued proceeding at which the Debtor was not present, the Indiana State Court and counsel for the parties discussed the fact that the Debtor may be responsible for up to $55,000 to fund Ms. Green's work, again without inquiry as to the Debtor's ability to fund the amounts discussed. *See generally* Tr. Aug. 16 at 71:3; Ex. G. During that colloquy, the Debtor's litigation counsel represented to the Indiana State Court that it was "my understanding [is that] Ms. Attariwala doesn't have that kind of money." Tr. Aug. 16, 2022 at 31:6–9; Ex. G at 41:6. The Indiana State Court then continued the hearing until the next day and ordered that the Debtor appear in person in Monroe County, Indiana at the hearing. Tr. Aug. 16, 2022 at 31:15; Ex. G. At the continued hearing on April 18, 2019, the Debtor did not appear, and litigation counsel represented to the Indiana State Court that the Debtor was meeting with bankruptcy counsel in the District of Columbia at substantially the same time.

Tr. Aug. 16, 2022 at 35:15; Ex. H at 3:7. As a result, the Indiana State Court ordered the Debtor

to pay $55,000 to the clerk's account to fund Ms. Green's work, without finding or consideration

of the Debtor's ability to pay (the "Contempt Order"). Ex. H at 92:8.

On April 30, 2019, the Debtor filed to remove the Indiana Litigation from the Indiana State

Court to the United States District Court for the Southern District of Indiana (the "Indiana Federal

Court"), where it remains. On May 6, 2019, after removal the Indiana State Court attempted to

enter findings of fact and conclusions of law in relation to the show cause hearing on April 18,

2019, at which the Debtor was held in contempt. The Indiana State Court entered an order finding

contempt and granting Singota default judgment (the "Default Judgment Order"), but this was later

vacated by Indiana Federal Court. Tr. Aug. 16, 2022 at 77:13–21; Ex. TT.

### b.  Pre-Petition: The Indiana Federal Litigation

Significant litigation occurred in the Indiana Federal Court following removal of the

Indiana Litigation and before the filing of the Debtor's chapter 13 petition. Relevant to the matters

herein, Singota filed an Amended Complaint against the Debtor and Mr. Singh, the Default

Judgment Order was vacated, and in October 2019 Singota filed for a further preliminary

injunction, which the Debtor opposed. *See* Am. Compl., *BioConvergence LLC v. Attariwala*, Case

No. 1:19-cv-01745 (S.D. Ind. June 18, 2019), ECF No. 30; Order, *BioConvergence LLC v.*

*Attariwala*, Case No. 1:19-cv-01745 (S.D. Ind. Oct. 23, 2019), ECF No. 91; Mot. Further Prelim.

Inj., *BioConvergence LLC v. Attariwala*, Case No. 1:19-cv-01745 (S.D. Ind. Oct. 10, 2019), ECF

No. 84.[13] After an August 5, 2019 pretrial conference, the Indiana Federal Court entered an *Order*

---

[13] The parties also litigated the question of whether Mr. Singh was a proper party to the case after his addition as a
defendant in the Amended Complaint. *See, e.g.*, Mot. To Dismiss for Lack of Personal Jurisdiction, *BioConvergence*
*LLC v. Attariwala*, Case No. 1:19-cv-01745 (Aug. 8, 2019), ECF No. 55. Mr. Singh was dismissed as a defendant in
March 2020. Order Granting Def. Mot. To Dismiss, *BioConvergence LLC v. Attariwala*, Case No. 1:19-cv-01745
(S.D. Ind. Mar. 23, 2020), ECF No. 175.

setting a settlement conference with the magistrate judge in the Indiana Litigation for December 13, 2019 (the "Settlement Conference"). Order, *BioConvergence LLC v. Attariwala*, Case No. 1:19-cv-01745 (S.D. Ind. Aug. 5, 2019), ECF No. 54. Prior to the Settlement Conference, on November 21, 2019, the Indiana Federal Court held initial oral argument on the Motion for Further Preliminary Injunction and continued the hearing to December 4, 2019. *See* Minute Entry, *BioConvergence LLC v. Attariwala*, Case No. 1:19-cv-01745 (S.D. Ind. Nov. 21, 2019), ECF No. 104.

On December 4, 2019, at the further hearing on the Motion for Further Preliminary Injunction the Debtor's counsel from McNeelyLaw LLP ("McNeely") represented to the Indiana Federal Court that the Debtor "can't afford it" when questioned about paying the $55,000 contempt charge. Tr. Aug. 16 at 134:17–18; Ex. L 46:10. Debtor's counsel from McNeely went on to inform the Indiana Federal Court that they were not being paid in full. Ex. L 48:22-25. At that time, McNeely was owed a balance of approximately $60,000 to $70,000. Tr. Aug. 16 at 142:20. At the conclusion of the hearing, the Indiana Federal Court instructed the parties to submit proposed orders on the issue of the further preliminary injunction. Ex. L.

While the Motion for Further Preliminary Injunction was pending, the Debtor and Singota attended the Settlement Conference at which no settlement was reached. The Debtor testified that she believed at the conclusion of the settlement conference that it had "failed." Tr. Aug. 16 at 144:10–15, 149:3; Ex. N. However, as indicated by the Order issued by the magistrate judge on December 16, 2019 (the day before the Petition Date), the Settlement Conference was continued with deadlines for the Debtor to provide financial information to Singota and for Singota to provide the Debtor a draft settlement agreement "consistent with the framework discussed at the settlement conference." Order, *BioConvergence LLC v. Attariwala*, Case No. 1:19-cv-01745 (S.D. Ind. Dec.

16, 2019), ECF No. 120. Two days later December 18, 2019 (the day after the Petition Date), the

Indiana Federal Court entered its Order preliminarily enjoining the Debtor from working at

Emergent (the "Injunction Order").[14] Prelim. Inj., *BioConvergence LLC v. Attariwala*, Case No.

1:19-cv-01745 (S.D. Ind. Dec. 18, 2019), ECF No. 122. Thereafter, the Debtor was terminated by

Emergent. Tr. Aug. 16 at 133:3–5; Ex. UU.

### c. *Pre-Petition: The Debtor's Financial Position.*

One of Singota's primary arguments in support of their argument of bad faith is the

allegation that the Debtor had the ability to pay all, or part of the amounts ordered in the Pay Order

and Contempt Order in the months prior to the Petition Date but did not. Tr. June 2 at 28:9–12.

Pre-petition the Debtor held an interest in various bank accounts including a joint checking account

(the "Chase Checking Account") and a joint savings account with Mr. Singh at Chase (the "Chase

Savings Account," collectively with the Chase Checking Account the "Chase Accounts"), a joint

checking account (the "BOA Checking Account") and a joint savings account with Mr. Singh at

Bank of America (the "BOA Savings Account," collectively with the BOA Checking Account, the

"BOA Accounts"), an individually owned JPMorgan Securities LLC account comprised of an

investment account (the "6232 Account," collectively with the Chase Accounts and the BOA

Accounts, the "Debtor's Accounts") and a managed IRA retirement account (the "Retirement

Account").[15] Tr. Aug. 16 at 32:24–25, 33:1–4, 35:22–23, 39:1–6, 48:18–9; Exs. V, Z, EEE, AA.

In addition to the accounts in which the Debtor held an interest, in June 2019 Mr. Singh opened

---

[14] Although the Injunction Order was entered post-petition, as previously described herein, the Court annulled the automatic stay as to the Injunction Order by Order dated January 30, 2020. ECF No. 42.

[15] The Debtor had a 401(k) account with Principal and another with John Hancock, but those accounts were rolled into Retirement Account.

an individually owned checking and savings account at Citibank (collectively the "Singh Citibank Account"). Tr. Aug. 16 at 130:23–25, 131:1; Ex. DD.

As of April 2019, when the Contempt Order was entered, the Debtor had a total of $89,547.66 in the Debtor's Accounts[16] and a balance of $113,538.81 in the Retirement Account. Tr. Aug. 16 at 52–53; Ex. AA at 921. In the intervening months, in addition to paying ongoing living expenses and monthly credit card balances, the Debtor made a number of non-ordinary course payments, as more fully discussed herein (the "Pre-Petition Payments"). Between the Pre-Petition Payments and the payment of ordinary expenses, by the Petition Date the Debtor had reduced balance in the Debtor's Accounts to $5,396.13.[17]

The Pre-Petition Payments fall into three general categories of non-ordinary course payments: (i) legal fees; (ii) additional payments on the secured obligations on her vehicle and home; and (iii) additional payments on Mr. Singh's student loan obligations. During the relevant period, the Debtor made payments to two law firms, namely McNeeley who represented her in the Indiana Litigation, and David E. Lynn, LLC with whom she was consulting as to bankruptcy and ultimately retained to represent her in this case. Between May 1, 2019 and the Petition Date, the Debtor paid McNeeley a total of $40,000 consisting of four (4) lump sum payments[18] and weekly payments of $400 beginning July 29, 2019 and continuing through the Petition Date.[19] The Debtor

---

[16] The total on deposit is calculated as follows: Chase Checking Account - $45,668.66, BOA Checking Account - $5,792.59, BOA Savings Account - $7,202.70, and 6232 Account - $30,883.60. Tr. Aug. 16 at 33:22, 36:21, 43:11, 53:3; Exs. V at 36, Z at 77, EEE at 5, AA at 921.

[17] $2,057.60 in the Chase Checking Account, $2,484.09 in the Chase Savings Account, $816.23 in the BOA Checking Account, $38.21 in the BOA Savings Account, $0.00 in the 6232 Account. In addition, as of the Petition Date Mr. Singh had $20,317.27 in his individual Citibank Account. *See* Exs. V, Z, EEE, AA.

[18] The lump sums paid were $2,000 on May 15, 2019, $25,000 on May 24, 2019, $2,600 on July 5, 2019, and $2,000 on July 8, 2019. Tr. Aug. 16 at 109:14–16, 110: 15–17, 115:5–7; Ex. V at 32, 26.

[19] *See* Ex. V at 3, 7, 14, 18, 22, 26 (weekly payments).

made three payments to Mr. Lynn totaling $16,430: $7,500 on May 1, 2019, $1,000 on or about

July 5, 2019, and $7,930 on December 16, 2019, the day prior to the filing of the Petition. Tr. Aug.

16 at 70:7–9, 114:20–22, 123:16–18. Ex. J; Ex. V at 32, 26, 3. Thus, roughly 63% of the funds in

the Debtor's Accounts in April 2019 went towards payment of legal fees in the eight months pre-

petition.

On July 8 and 9, 2019, the Debtor, in addition to her regularly scheduled payments, made

additional payments in approximately the amount of three months of regular payments to the

holder of the secured loan on her home, her homeowner's association, and the holder of the secured

loan on her vehicle. The total of these payments was $9,863.85, or approximately 11% of the funds

in the Debtor's Accounts in April 2019.[20] On the same dates, the Debtor and/or Mr. Singh caused

two additional payments to be made to the holders of Mr. Singh's student loans in the total amount

of $7,751.85 representing approximately three months of extra monthly payments. Tr. Aug. 16 at

115:17–24, 130:1–5; Ex. V at 26. A further allegedly additional payment to a student loan lender

was made on the date of the bankruptcy filing in the amount of $2,000, for a total payment towards

Mr. Singh's student loans of just under 11% of the funds in the Debtor's Accounts in April 2019.

Tr. Aug. 16 at 124:1–4; Ex. V at 3. Thus, without consideration for the deposit and use of the

Debtor's ongoing income during the same period, which was deposited into the Chase Accounts,

approximately 85% of the balance in the Debtor's Accounts as of April 2019 can be attributed

towards payments on one of the three non-ordinary course categories. The balance of $13,501.96

went to the payment of ordinary course expenses and a small amount went towards costs of the

Debtor's business Honey Ji's ($2,000, approximately 2%). The Debtor testified that the non-

---

[20] $6,799.59 to mortgage holder Caliber Home Loan, $1,864.26 to homeowners' association Kenyon Square, $1,200 to vehicle lender Nissan. Tr. Aug. 16 at 118:10–14, 119:8–10, 129:15–17; Ex. V at 26; Ex. Z. at 91.

ordinary course payments were made, at least in part, because she was "scared" of losing what was important, her home, and car. Tr. Aug. 16 at 118:23–25.

### d. *Pre-Petition Consultation with Bankruptcy Counsel*

The Debtor first consulted with bankruptcy counsel on or about April 18, 2019, the date of the continued hearing on Singota's Motion for Contempt in the Indiana State Court. Tr. Aug. 16 at 59:5–11, 60:1–10. The Debtor engaged bankruptcy counsel to prepare to file bankruptcy, if needed, while simultaneously hoping to resolve the Indiana Litigation without the need to file. Tr. Aug. 16 at 67:20, 78:12. After the initial meeting, the Debtor, with the assistance of Mr. Singh, provided documents to Mr. Lynn including a bankruptcy questionnaire, a retainer agreement, and certain financial documents. Tr. Aug. 16 at 67:20, 68:10–22, 70:12–15, 128:8–21. Not only did bankruptcy counsel consult with the Debtor and Mr. Singh, but he also consulted with the Debtor's litigation counsel in Indiana. As the Indiana Litigation progressed from state court into federal court, and in light of Singota's Motion for Further Preliminary Injunction and the hearing thereon on December 4, 2019, the Debtor updated her information with bankruptcy counsel in December in preparation for a potential filing. On December 11, 2019, the Debtor, in preparing for a possible filing, took the required credit counseling course. Tr. Aug. 16 at 143:1–2.

### e. *The Filing of the Petition and Entry of the Preliminary Injunction*

After the "failure" of the Settlement Conference, and due to both the substantial sums allegedly owed to Ms. Green and Singota and the fact that there was not enough money "to go around," on December 15, 2019, the Debtor signed her petition, and her chapter 13 case was filed on December 17, 2019. Tr. Aug 16 at 147:17–22, 148:1–3. Shortly thereafter, upon entry of the

Injunction Order, the Debtor was terminated by her employer Emergent.[21] Tr. Aug. 16 at 106:22.

The Debtor testified that she did not file the bankruptcy in an attempt to stop the entry of the

Preliminary Injunction in favor of Singota. Tr. Aug. 16 at 150:1–5. While it is clear from the record

that there was a breakdown between the Debtor and McNeely on the Petition Date such that that

the notice of bankruptcy was not timely filed in the Indiana Litigation, the suggestion of

bankruptcy was filed the next day on December 18, 2019. *See* Suggestion of Bankruptcy,

*BioConvergence LLC v. Attariwala*, Case No. 1:19-cv-01745 (S.D. Ind. Dec. 18, 2019), ECF No.

123.

### f.   *Post-Petition Disclosures*

On December 31, 2019, the Debtor, through Mr. Lynn, filed a motion to extend time to file

a chapter 13 plan, statements, and schedules in the case (the "Motion to Extend") indicating that

the case was filed on an emergency basis despite the extensive exchange of information with the

Debtor prior to the filing. Mot. for Extension, ECF No. 17. It appears that the perceived failure of

the settlement conference caused the Debtor to determine that "enough was enough" and that

expeditious filing was the best choice. Tr. Aug. 16 at 155:16–21. The Motion to Extend also

references unrelated time pressures on counsel as an additional basis for the relief requested

therein. ECF No. 17. The Motion to Extend was granted without objection, and the Debtor then

timely filed her required documents. Order Granting Mot. For Extension, ECF No. 21.

Singota points to certain of the Debtor's disclosures in this case, which Singota alleges are

inaccurate and support a finding of bad faith, including: (i) the valuation of the Debtor's

---

[21] In the Oral Ruling, Judge Teel stated that the Debtor was unemployed as of the Petition Date. Tr. Oral Ruling at
42:4–7. Technically the Debtor was employed on the Petition Date but was terminated on the first full day of the case.
This difference is not material and does not alter the findings and conclusions reached by Judge Teel in the Oral
Ruling.

engagement ring in Schedule A/B; (ii) the valuation of Honey Ji in Schedule A/B; and (iii) the

failure to include the $0 balance 6232 Account in her original schedules. Tr. June 2 at 31:11; Tr.

Aug. 16 at 165:4–8, 166:6, 167:3–11. The Court finds that the value of $7,500 in Schedule A/B

for the Debtor's engagement ring is reasonable. Schedule A/B does not require a debtor to list an

"insurance value." The 2015 appraisal done for insurance purposes with a value in excess of

$23,000 is not conclusive as to value in this bankruptcy case. The Debtor may testify as to her

opinion of value, and other than the insurance appraisal, no other evidence was offered to challenge

her opinion. Similarly, the Court finds that the Debtor's scheduled value of $0 for the defunct

company, despite a small amount of money in a bank account is also appropriate. *In re Stratton*,

248 B.R. 177, 182 (Bankr. D. Mont. 2000) ("[U]nder Fed. R. Evid. 701 an owner is competent to

give her opinion on the value of her property."). At all relevant times, Honey Ji has been a defunct

company without access to its business records and without value for sale or otherwise, but which

did have ongoing minimal costs. A cash basis accounting of a company is not the same as a

business valuation. As the owner of Honey Ji's, a company for which the principal asset was

unavailable, the Court finds the Debtor's lay valuation reasonable.

Originally, the Debtor failed to include the 6232 Account in her schedules, which was still

open with JP Morgan, appeared on her statements, but which had a $0 balance as of December 3,

2019. The Debtor ultimately added the account to her schedules in an amendment filed February

16, 2022. Am. Sched. A/B: Property at 6, ECF No. 218. The statements for the account were

included in the discovery produced to Singota October 2020. Tr. Aug. 19, 2022 at 24:16–25,

26:10–24. While the Court does not condone the failure to include the open account in her original

schedules, debtors are liberally allowed to amend their schedules, and a $0.00 balance account has

no impact on the means test or best interest of creditors calculations for consideration of the

required funding for confirmation of a chapter 13 plan. *See* Fed. R. Bankr. P. 1009(a) ("A voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed."). The account is now disclosed in the Debtor's amended schedules, Singota has had full access to the records of the account, and the statements have been made part of the record in this matter.

The terms of the Debtor's Plan have been summarized elsewhere but are restated again here. The Debtor is proposing to pay $18,000 over 5 years despite being below-median income, and three years into the case is current on payments to the Trustee. Am. Chapter 13 Plan at 2, ECF No. 61. If the Debtor's income is insufficient to make payments, she has committed to using funds from her exempt retirement funds to fund the plan. Tr. Oral Ruling at 42:22–43:12. The Debtor is making payments to the secured lender on her car and home directly outside of the Plan. ECF No. 61 at 5. Despite the scheduling and existence of other significant creditors including over $40,000 to the Debtor's parents for wedding expenses, unpaid legal fees to Indiana Litigation counsel, and disputed potential claims of Ms. Green, the timely filed claims in this case represent about $5,000 in credit card debt and the claim of Singota. As Judge Teel found in the Oral Ruling, the Debtor is in need of financial rehabilitation and is seeking to complete such rehabilitation through this chapter 13 case.

## II.     Jurisdiction.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### III.    Discussion.

After adoption of the findings and conclusions reached in the 2020 Oral Ruling, the remaining issue before the Court is the applicable standard under § 1325(a)(7) as to whether this case was filed in good faith. In the 2020 Oral Ruling, this analysis was combined, in part, with the Court's the analysis under § 1325(a)(3). Section 1325(a)(7) was added to the Bankruptcy Code by BAPCPA[22] as an additional requirement for confirmation of a chapter 13 plan, separate and distinct from the already-existing § 1325(a)(3). Given this addition to the existing language, the general/specific canon of statutory construction applies to the analysis of the subsections of § 1325 and requires that the Court analyze each subsection of § 1325 on its own merits during the plan confirmation process. *See RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) ("But the canon has full application as well to statutes such as the one here, in which a general authorization and a more limited, specific authorization exist side by side."). To do otherwise would effectively render § 1325(a)(7) surplusage. Therefore, by the addition of § 1325(a)(7) to the confirmation standard, Congress must have intended for courts to conduct a separate and distinct analysis determine if "the action of the debtor in filing the petition was in good faith." 11 U.S.C. § 1325(a)(7); *In re Powers*, 554 B.R. 41, 59 (Bankr. N.D.N.Y. 2016) ("Section 1325(a)(3) tests the reasonableness of the plan and the sincerity of the debtor with respect to that particular plan [and] § 1325(a)(7) tests whether the filing is fundamentally fair and in a manner that complies with the spirit of the Code . . . .").

Having determined that § 1325(a)(7) requires a separate analysis from § 1325(a)(3), the next question is what standard must be applied to evaluate whether the Debtor has met such

---

[22] Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109–8, 119 Stat. 23 (codified as amended in scattered sections of 11 U.S.C.).

requirement. The focus of the inquiry under § 1325(a)(3) is on the filing of the *plan* in question and may change depending on the plan under consideration, whereas the inquiry under § 1325(a)(7) focuses on the filing of the petition initiating the case or whether the "debtor filed the petition for a greedy and unworthy purpose as opposed to a rehabilitative purpose." *Powers*, 554 B.R. at 59 (quoting *Henderson v. Wade (In re Wade)*, No. 15-66793, 2016 Bankr. LEXIS 739, *13 (Bankr. N.D. Ga. Mar. 4, 2016).

In this Circuit, the starting point for a good faith analysis is the "honesty of intention" of utilizing the rehabilitative purpose of chapter 13 standard from *Barnes v. Whelan (In re Barnes)*, 689 F.2d 193, 200 (D.C. Cir. 1982). In *Barnes*, the D.C. Circuit examined case law prior to the enactment of § 1325(a)(3) in its analysis of the term "good faith" in that subsection. In that analysis, the D.C. Circuit noted that decisions considering "good faith" under the interpreting the 1898 Bankruptcy Act focused on a debtor's misconduct such as fraudulent misrepresentation or nondisclosure of a financial interest in finding a lack of good faith, summarizing it as "cases of debtor misconduct in the implementation . . . of the plan." *Barnes*, 689 F.2d at 199. However, the D.C. Circuit declined to provide a comprehensive definition for the term "good faith" in bankruptcy cases. *Id.* at 200. Nevertheless, *Barnes* remains instructive on the appropriate standard for determining whether a case was filed in good faith with an honesty of intention under the totality of the circumstances for purposes of § 1325(a)(7).

On a practical level, several of the factors identified by courts to evaluate the totality of the circumstances analysis for "good faith" under § 1325(a)(3) are equally applicable to an analysis under § 1325(a)(7). *In re De Rua*, Case No. 09-17529-B-13, 2009 Bankr. LEXIS 4497, *6 (Bankr. C.D. Cal. Oct. 14, 2009). Factors identified by courts include the motivation of the debtor in the sincerity of filing chapter 13, the debtor's degree of effort in seeking rehabilitation, the frequency

with which the debtor has filed for bankruptcy relief, the circumstances under which the debtor contracted their debts, and the debtor's good faith in dealing with creditors. *See In re Powers*, 554 B.R. at 59; *accord In re Gutierrez*, 633 B.R. 768, 802–03 (Bankr. S.D. Tex. 2021). These factors are substantially similar to those found in the *Colston* good faith analysis discussed *supra*.

Of the factors from *Colston* identified in the Oral Ruling to determine good faith under § 1325(a)(3), the following are applicable in this case to the Court's analysis of the Debtor's good faith in filing this case for purposes of § 1325(a)(7): (i) the debtor's financial situation; (ii) the debtor's employment history, and current and future employment prospects; (iii) the nature and amount of unsecured claims; (iv) the debtor's past bankruptcy filings; (v) the debtor's honesty in disclosing facts of the case; (vi) the nature of the debtor's pre-petition conduct that gave rise to the case; (vii) whether the debts would be dischargeable in a Chapter 7 proceeding; and (viii) any other unusual or exceptional problems the debtor faces. *See In re Colston*, 539 B.R. at 747. The analysis for factors (i), (iii), (iv), and (vii) is the same for § 1325(a)(7) as for § 1325(a)(3), therefore, for the reasons stated in the Oral Ruling, the Court finds that each of these factors weighs in favor of the Debtor's good faith. The Court will address each of the remaining elements in turn.[23]

    a.  <u>The Debtor's employment history, and current and future employment prospects</u>. As of the Petition Date, the Debtor was facing the imminent reality of losing her lucrative employment with Emergent, which came to fruition within days of the filing of the case. In addition to enjoining her from working from Emergent, the Preliminary Injunction also enjoins the Debtor from working from "any other competitor" of Singota until certain conditions are met. Ex. UU. In other words, at the time of filing the Petition the Debtor not only faced the very real possibility of

---

[23] As indicated in *Colston*, the debtor bears the burden for confirmation, by a preponderance of evidence. *In re Colston*, 539 B.R. at 746; *In re Cole*, 548 B.R. 132, 141 (Bankr. E.D. Va. 2016).

losing her job, but also the equally possible inability to find any type of similar employment. The Debtor became unemployed shortly after the Petition Date and remained unemployed as of the 2020 Confirmation Hearing. In the intervening 2.5 years since the 2020 Confirmation Hearing, the Debtor has found partial employment in a new field as a real estate agent, but her income is significantly less than prepetition and so minimal that it appears to be insufficient even to require a modification to her chapter 13 plan. *See* 11 U.S.C. § 1329; *Germand v. Powers (In re Powers)*, 826 F.3d 962 (7th Cir. 2016).

In addition, even if the Preliminary Injunction were lifted and the Debtor could seek employment similar to her prepetition employment, the language in the Preliminary Injunction allowing for automatic reinstatement of the injunction inherently impacts her employability. Until the Preliminary Injunction is completely vacated or otherwise disposed of, the Court finds the Debtor's future employment prospects in her former industry are minimal or virtually nonexistent. As Judge Teel found, by filing this case, the Debtor sought to deal with her prepetition debts based upon her actual employment and earning capacity. In light of the Preliminary Injunction, the Court finds her current and future earning capacity significantly lower than her prepetition employment and income. The pending probable diminution in earning capacity as of the petition date and actual postpetition diminution supports the Debtor's good faith in filing this case. The Court agrees with Judge Teel that it does not condone the actions of the Debtor in the Indiana Litigation, but nevertheless, finds that this factor as to the Debtor's past and future employment prospects weighs in favor of good faith in filing this case.

      b.  <u>The Debtor's honesty in disclosing facts of the case</u>.

There is evidence in this case that the Debtor delayed or potentially intentionally failed to disclose certain assets. At the 2022 Confirmation Hearing, significant emphasis was placed on the

failure to initially disclose the $0.00 balance 6232 Account and the Debtor's scheduled valuations for Honey Ji's and her engagement ring. In addition, there have been multiple motions throughout this case seeking to compel or otherwise address discovery issues with the Debtor.[24] Taking into consideration each of these, what is clear, is that the Debtor has not always made things easy on herself. The failure to timely respond to discovery, particularly discovery due prior to the 2020 Confirmation Hearing, implies an intent to not fully and completely disclose facts related to this case. The Debtor's testimony on this point was inconsistent. The Debtor testified that the delays were associated with her ability to gather responsive documents (specifically bank statements), while later contradictorily testifying that she was able to obtain the bank statements from the internet by simply logging into her account. If the statements were always available online, the delays in production are hard to explain in any manner but to infer that the Debtor intended to delay disclosure of at least those documents readily available online. It is unclear from the evidence as to whether all of the documents for which production was delayed were readily available online or whether a request would have had to been made to the applicable financial institution. Therefore, the Court finds that the Debtor's conduct as to discovery responses is either neutral or weighs slightly against a finding of good faith.

---

[24] *See, e.g.*, Def.'s Emerg. Mot. for Relief and Protective Order for Dep. and Ext. to Respond to Pl.'s Mot. for Sanctions and Mot. to Am. Inspection Order, *BioConvergence v. Attariwala*, Case No. 1:19-cv-01745 (S.D. Ind. Oct. 29, 2020), ECF No. 252; Pl.'s Resp. in Partial Opp'n, *BioConvergence v. Attariwala*, Case No. 1:19-cv-01745 (S.D. Ind. Nov. 16, 2020), ECF No. 255; Def.'s Obj. to Pl.'s Subm. of File Listings and Mot. to Hold Singota and Chris Murray in Contempt for Failure to Comply with Court Orders, *BioConvergence v. Attariwala*, Case No. 1:19-cv-01745 (S.D. Ind. May 12, 2022), ECF No. 379; Pl.'s Opp'n to Def.'s Obj. to Pl.'s Subm. of File Listings and Mot. to Hold Singota and Chris Murray in Contempt for Failure to Comply with Court Orders, *BioConvergence v. Attariwala*, Case No. 1:19-cv-01745 (S.D. Ind. May 31, 2022), ECF No. 383; Def.'s Reply in Supp. of Her Obj. to Pl.'s Subm. of File Listings and Mot. to Hold Singota and Chris Murray in Contempt for Failure to Comply with Court Orders, *BioConvergence v. Attariwala*, Case No. 1:19-cv-01745 (S.D. Ind. June 14, 2022), ECF No. 383; Mot. to Quash Def.'s Dep., *BioConvergence v. Attariwala*, Case No. 1:19-cv-01745 (S.D. Ind. Aug. 24, 2022), ECF No. 394; Pl.'s Resp. in Opp'n, *BioConvergence v. Attariwala*, Case No. 1:19-cv-01745 (S.D. Ind. Aug. 25, 2022), ECF No. 397.

With respect to the scheduled values for Honey Ji's and the engagement ring, the Court finds that the Debtor's disclosure was appropriate under the circumstances. The Debtor's valuations were based not on book value or appraised value (as argued by Singota), but by Debtor's opinion as to of the actual value (or, as she phrased it "what [she] could sell it for"). Tr. Aug. 19 at 47:17–22. Section 521 requires a that debtor file their schedules in "good faith." *See In re Blount*, 624 B.R. 590, 597 (Bankr. N.J. 2020) (quoting *In re Kane*, 628 F.3d 631, 636 (3d Cir. 2010)). Debtors are not expected to schedule the exact value of their assets, a good faith estimation is sufficient. *See id*. at 599. Other than a dated appraisal issued for insurance purpose, there is no evidence in this case that the Debtor did not include a good faith estimation as to the value of her engagement ring as of the Petition Date. The Court finds that there is a difference between an appraised value for insurance purposes and value for bankruptcy schedules.[25] Therefore, as to the honesty of the Debtors' schedules as to the valuation of Honey Ji's and her engagement ring, the Court finds this factor weighs in favor of a finding of good faith.

    c.   The nature of the Debtor's pre-petition conduct that gave rise to the case.

Prepetition, the Debtor accepted and began a job with a competitor of Singota. The Court makes no findings as to the Debtor's transition between employers or the actions taken related there, all of which are subject to the Indiana Litigation. What is relevant is that the Debtor's former employer, Singota, has filed numerous cases and pleadings alleging that in changing her employment, the Debtor engaged in the misuse of confidential information. The Debtor contests these allegations. To be sure, the Debtor has not done herself any favors with certain of her conduct

---

[25] One only has to watch an episode of Antiques Roadshow to understand that assets are provided a higher value for insurance purposes than for retail sale or auction purposes. *See, e.g.*, *Signed Joe DiMaggio Game-used Bat, ca. 1946*, PBS, Antiques Roadshow, https://www.pbs.org/wgbh/roadshow/season/24/sacramento-ca/appraisals/signed-joe-dimaggio-game-used-bat-ca-1946--201903A17/ (last visited Feb. 2, 2023).

related to the turnover and treatment of her electronic devices and other discovery. However, Singota also has engaged in delays and dilatory tactics in the Indiana Federal Case with respect to electronic devices.[26] Thankfully, the questions and issues regarding the electronic information and devices is not a question before this Court. Those questions are clearly before the Indiana Federal Court. As of the date of the 2022 Confirmation Hearing, the Indiana Litigation was still in mostly nascent stages without a determination as to any of the issues raised therein by Singota against the Debtor and vice versa.

For the purposes of this case and the question of confirmation, the question is the nature and character of the Debtor's conduct giving rise to the filing of her petition on the Petition Date. One factor is her conduct in the Indiana Litigation which resulted, in part, in out of the ordinary expenses (legal fees and court-ordered payments). Judge Teel addressed the allegations of the characterization of the Debtor's actions in the Indiana Litigation, and nothing has changed with his evaluation that while the Court does not condone the conduct, and that her debts are arguably much higher as a result, the Debtor is nevertheless in need of financial restructuring.

The evidence clearly shows that the Debtor began consultations as to a possible bankruptcy case in April 2019. It is not uncommon for a debtor, particularly one with a complex legal situation, to consult with counsel for weeks or months (if not longer) prior reaching a point where a bankruptcy petition is filed. *See* 11 U.S.C. § 329(a) (requiring counsel for a debtor to file with the court a statement of compensation paid in contemplation of or in connection with a bankruptcy case for the *one-year* period prior to the petition date). The Debtor testified that although she consulted with counsel, she did so with the hope that she could resolve the outstanding litigation

---

[26] *See, e.g.*, Order, *BioConvergence LLC v. Attariwala*, Case No. 1:19-cv-01745 (S.D. Ind. Sept. 20, 2022), ECF No. 408.

and not need to file a bankruptcy case. She further testified that it was not until she believed the Settlement Conference failed in December 2019 that she decided to file a bankruptcy case. Other than the increased costs associated with the litigation with Singota, in the months and weeks leading up to the Petition Date, the Debtor did not incur any significant additional debts or purchase any luxury goods.

Singota points to the Debtor's prepetition use of the funds in the 6232 Account, including approximately three extra payments on her mortgage, car loan, homeowner's association fees, and her spouse's student loans as evidence of bad faith in the act of filing this case. However, "[t]he mere fact that pre-bankruptcy planning has occurred is not indicative of bad faith as such." *In re Chilhowee R-IV School Dist.*, 145 B.R. 981, 983 (Bankr. W.D. Mo. 1992). There is nothing inappropriate in an individual planning for the worst while hoping for the best. Unfortunately for the Debtor, she did ultimately need to file this case. The total value of the non-retirement portion of the 6232 Account in April 2019 was $31,501.48, and by the time her petition was filed the non-retirement portion was at $0. Ex. AA. If all the funds in the 6232 Account or even all of the Debtor's Accounts had been diverted to pre-payments on secured loans, HOA fees, or other debts, the question of bad faith might be more difficult. However, in this case only $9,863.85 or just over 31% of the 6232 funds went towards the pre-payments, the balance went towards the payment of ongoing expenses including a significant amount towards her counsel in the Indiana Federal Court and this case. Further 85% of her funds on hand as of April 2019 went towards payments of legitimate ongoing costs such as attorneys' fees and living expenses. As such the Court finds that the Debtor has not "crossed the proverbial line" with respect to prebankruptcy planning.[27]

---

[27] *Wolkowitz v. Beverly (In re Beverly)*, 374 B.R. 221, 245 (B.A.P. 9th Cir. 2007) (Treading carefully is necessary because, as noted, it is difficult to draw the line between legitimate bankruptcy planning and intent to defraud creditors.)

Therefore, the Court finds that the Debtor's prebankruptcy planning is not evidence of bad faith, but instead is evidence of increased prepetition costs and good prepetition legal advice.

To be sure, Singota would have much preferred for the Debtor to have used all or part of the funds during that period to pay for Ms. Green's fees and has sought aggressively for that result, in addition to the rest of the relief requested in the Indiana Litigation. It is far from uncommon for aggressive creditors to put debtors between the proverbial rock and a hard place. *See*, *e.g.*, *In re Stephens*, Case Nos. 21-40817-elm-11, 21-41010-elm-11, 21-41011-elm-11, 2022 Bankr. LEXIS 433, at *24 (Bankr. N.D. Tex. Feb. 22, 2022) ("Moreover, a prospective debtor is not required to exhaust all avenues of recourse in relation to pending litigation before seeking the breathing spell refuge of bankruptcy relief."). In addition, there is nothing outside of bankruptcy which prohibits an individual from preferring one creditor to another. The debtor spent at least eight months trying to find a way to escape or resolve the issues with Singota, but ultimately, she believed her only option was to file for bankruptcy relief. The Court finds that this factor weighs in favor of the Debtor's good faith.

> d.  <u>Whether the Debtor's debts would be dischargeable in a chapter 7 proceeding.</u>

With the exception of Singota's presently unliquidated and highly disputed claim, all of the Debtor's other claims would be dischargeable in a chapter 7 proceeding. Singota's claim is based upon the Indiana Litigation, which includes twelve different counts that Singota alleges would be nondischargeable under § 523(a)(4). *See* Comp. at ¶¶ 88–90, *BioConvergence LLC v. Attariwala*, AP No. 20-10009-ELG (Mar. 13, 2020), ECF No. 1. Judge Teel previously denied Singota's motion for default judgment in the dischargeability adversary proceeding and, in the order, noted the interrelated nature of the Indiana Litigation and the adversary proceeding. Mem. Decision Order Mot. for Default at 5, *BioConvergence LLC v. Attariwala*, AP No. 20-10009-ELG

(June 23, 2020), ECF No. 15 (Teel, J.). Since entry of that order, and because Singota was granted

relief from the automatic stay in this case, the adversary proceeding has remained dormant pending

resolution of the case in the Indiana Federal Court. Thus, there is an allegation that, if successful,

all or part of Singota's claim may be nondischargeable under both § 523(a)(4) if the Debtor's case

were to convert to chapter 7 and pursuant to § 1328(a)(2). Therefore, there is no greater relief to

the Debtor in this case than in a chapter 7 case, and this factor supports a finding of good faith.

> e.  Any other unusual or exceptional problems the Debtor faces.

As noted by the Court above, the Debtor's whole case has been clouded with the

exceptional situation of being conducted currently with aggressive and voluminous litigation in

the Indiana Federal Court. Transcripts, documents, and statements made within this case have been

routinely used with almost immediate effect by Singota in the district court proceeding and vice

versa (i.e., the appraisal of the Debtor's engagement ring was located in the Debtor's computer as

part of Singota's search of the device). This Court agrees with both Judge Teel and the Indiana

Federal Court that the Debtor has, at times, not made her situation easy on herself. Throughout the

pendency of the confirmation proceedings, the Court was keenly aware of the physical and mental

toll both this case and the Indiana Litigation have taken on the Debtor. While the existence of

litigation itself is not unusual or exceptional for a bankruptcy debtor, the very apparent hostile

situation that has arisen from this particular ongoing litigation is at an unusual level for most

chapter 13 debtors. This factor does not weigh specifically in favor of or against good faith, but

instead is an overarching consideration applied to the Court's totality of the circumstances

analysis.

Applying the identified the *Colston* factors to a good faith analysis under § 1325(a)(7), and

upon review and consideration the evidence at the 2022 Confirmation hearing, the Court finds that

each of the factors either is neutral or weighs in favor of the Debtor's good faith. Therefore, the Court finds that the Debtor filed this case in good faith and that all elements of § 1325(a) are met and the Plan should be confirmed.

IV.    Conclusion

Therefore, for the reasons set forth herein finding that the Plan meets each of the requirements of § 1325(a) and upon recommendation of the chapter 13 trustee, the Objection is overruled, and the Plan shall be CONFIRMED. A separate Order Confirming Plan will be entered.

[Signed and dated above.]

Service to: counsel of record; Debtor.